# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMIR FATIR, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| | : |
| v. | : Civ. No. 18-933-CFC |
| | : |
| COMMISSIONER PERRY PHELPS, | : |
| et al., | : |
| | : |
| Defendants. | : |

Amir Fatir, Daniel Rivera, Ramazan Sahin, Brenton Smith, Jacquell Coverdale, Kenneth Yarborough, Donald Clark, Jermaine D. Laster, Deronta Person, and Robert W. Johnson, Jr., James T. Vaughn Correctional Center, Smyrna, Delaware; Malachai DeBruce, New Castle, Delaware; Antonio R. Bailey, Howard R. Young Correctional Center, Wilmington, Delaware; Colin Simms, Smyrna, Delaware; and Arthur Stratton, Magnolia, Delaware.  Pro Se Plaintiffs.

## **MEMORANDUM OPINION**

May *17* , 2019
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

## I.    INTRODUCTION

Plaintiffs were convicted and sentenced inmates housed at the James T. Vaughn

Correctional Center ("VCC") in Smyrna, Delaware,[1] when they filed the Complaint as a

civil rights action pursuant to 42 U.S.C. § 1983[2] and a *qui tam* False Claims Act action

pursuant to 18 U.S.C. §§ 286-287 and 31 U.S.C. §§ 3729-3733.[3]  (D.I. 1)  Plaintiffs

appear *pro se* and have been granted leave to proceed *in forma pauperis.*[4]  (D.I. 50)

The Court proceeds to review and screen the matter pursuant to 28 U.S.C. §

1915(e)(2)(b) and § 1915A(a).

## II.    BACKGROUND

On March 1, 2018, at 10:25 a.m., VCC correctional officers raided the VCC B-

Annex Unit, Dorms 2 and 3,  and ordered the inmates to dress and leave the dorms.

(D.I. 1 at 6, ¶ V.)  Plaintiffs allege that Defendants Chick ("Chick"),[5] correctional officers

---

[1] Plaintiffs Malachai DeBruce ("DeBruce"), Colin Simms ("Simms"), and Arthur Stratton ("Stratton") are no longer incarcerated.  Plaintiff Antonio R. Bailey ("Bailey") is now housed at the Howard R. Young Correctional Institution in Wilmington, Delaware.

[2] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[3] 18 U.S.C. § 287 is the criminal false claims statute; 18 U.S.C. § 286 is a companion statute to the criminal false claims statute for conspiracy to defraud the government by filing false claims; and 31 U.S.C. § 3729, is the civil analog of the criminal false claims statute.

[4] Six Plaintiffs have since been dismissed.  (*See* D.I. 41, 67, 72)

[5] Chick is not identified as a defendant in the caption of the Complaint or in its "II. Parties" section that describes each defendant, but he is described as defendant in the body of the Complaint.

1

Enck ("Enck")[6] and Jester ("Jester"), and female officers Lieutenant Tilghman ("Tilghman") and Sergeant Everett ("Everett") ushered the inmates into the hall and ordered them to form a single file line against one of the walls. (*Id.* at 7, ¶ V.) Plaintiffs allege that Tilghman and Everett went to a desk at the end of the hall and began monitoring a computer screen; Enck and Jester went to a room at the opposite end of the hall, Enck entered the room; and Jester stood at the door's entrance while Chick remained in the hall and stood between Tilghman and Everett and Enck and Jester. (*Id.*) Plaintiffs allege that Tilghman was the superior officer of Enck and Jester and the person who controlled the strip search operation. (*Id.* at ¶ V.6)

Plaintiffs allege they were called into the room, one at a time. (*Id.* ¶ V.1.) There, Enck "caused each [P]laintiff to strip and expose their genitals and buttocks while handing [] Jester articles of [] [P]laintiff's clothing for inspection." (*Id.* at ¶ V.2.) When Plaintiffs entered the room they told Enck and Jester there was a live camera feed that made it possible for viewing by other Department of Correction ("DOC") staff. (*Id.* at ¶ V.3.) Defendants acknowledged the camera and ordered Plaintiffs to continue stripping. (*Id.*) Plaintiffs allege that "[w]hile 50 men were stripped naked before live camera feeds, which were also recorded," Defendants James P. Satterfield ("Satterfield")[7] and Lt. Barlow ("Barlow"), both male, watched the men on computer screens in Satterfield's office and secondary control where Barlow worked. (*Id.* at ¶ 4 at

_____

[6] The Complaint also spells Enck's name as "Encke."

[7] The Complaint alleges that Satterfield is "either bisexual or homosexual." (D.I. 1 at Count 6)

2

III) Plaintiffs alleges the entire strip search lasted approximately two hours for both dorms. (*Id.* at ¶¶ III; V.3.)

After the search, Plaintiffs were allowed to dress and were ushered to the common dining area located across the hall from the area where Plaintiffs had been searched. (*Id.* at ¶ V.5.) Plaintiffs spoke to Tilghman regarding the strip search, asked why she had ordered it and allowed them to be stripped naked in front of a camera, and told her they wished to exercise their rights to call the Prison Rape Elimination Act ("PREA")[8] hotline and report they were victims of sexual abuse. (*Id.* at ¶¶ V.6., 7., 9.) Tilghman responded that they did not have to because the information had already been reported and all that would happen is that Plaintiffs would be sent to mental health. (*Id.* at ¶ V.10.) Tilghman told Plaintiffs it was their right to speak to an outside PREA advocate, she left the area, and returned to tell Plaintiffs she had contacted Shift Commander Satterfield. (*Id.* at ¶ V.13.) Tilghman instructed Plaintiffs "not to contact the PREA hotline because 'the matter is already being handled.'" (*Id.*)

Plaintiffs contacted the PREA hotline and "believed they were contacting an 'outside PREA advocate' unassociated with the DOC." (*Id.* at ¶ V.16.) Plaintiffs allege they encountered Defendant Guard No. 1 Jane Doe ("Doe"), a hostile DOC employee, who initially ordered Plaintiffs to call individually and, after two calls, advised Plaintiffs if they continued to call she would not be able to write any reports because she needed at least 15 minutes to write each report. (*Id.*) Plaintiffs allege that Doe refused to provide her name and would not state whether she was affiliated with the DOC as an employee.

---

[8] The Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309, is a federal law dealing with the sexual assault of prisoners.

(*Id.* at ¶ V.17.) After Plaintiffs made their PREA reports, they were taken to the medical unit for a two minute interview with nurses and a mental health staff member employed by Connections ("Connections"), the DOC medical contract provider. (*Id.* at ¶ V.18.) Plaintiffs allege a Connections' mental health staff member confirmed that Doe is a DOC employee. (*Id.* at ¶ V.20.) Plaintiffs filed grievances regarding the matter and allege the DOC ignored them. (*Id.* at ¶ V.21.)

Plaintiffs allege that PREA, 34 U.S.C. § 30302(8), "calls for federal expenditures via grants provided to the states and dispensed through the State Attorneys Generals" and requires that Defendants meet "specific protocols and standards," found at 28 C.F.R. Part 115, and audits conducted "to assure the monies allocated are spent according to the terms of the Act." (*Id.* at 4 at ¶ III.) Plaintiffs allege that Defendants "systematically and deliberately syphoned off [] PREA funding, failed to enact PREA's protocols, falsified documents and stole [] federal funds to use them for personal or other intended use." (*Id.*)

All Plaintiffs seek compensatory and punitive damages. (*Id.* at 19-20 at ¶ VII.) Plaintiffs Amir Fatir ("Fatir") and DeBruce seek 25 percent of the *qui tam* action or settlement of the False Claims Act civil claim. (*Id.* at 20 at ¶ VII.*)

## III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448,

4

452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiffs proceed *pro se*, their pleading is liberally construed and their Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for

5

failure to state a claim upon which relief can be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of any well-pleaded factual allegations and then determine

whether those allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. False Claims Act

Plaintiffs allege that Defendants Perry Phelps ("Phelps"), Dana Metzger ("Metzger"), Jane Brady ("Brady"), Robert Coupe ("Coupe"), Carl Danberg ("Danberg") Steven Wesley ("Wesley"), Lt. Sennett ("Sennett"), Terrell Taylor ("Taylor"), Christopher Cessna ("Cessna"), Bruce Burton ("Burton"), Philip Parker ("Parker"), Deputy Warden Scarborough ("Scarborough"), Senato ("Senato"),[9] Michael S. Jackson ("Jackson"), Joyce Talley ("Talley"), and Mike Deloy ("Deloy") failed to comply with various provisions of PREA, 28 C.F.R. §§ 115.31, 115.32, 115.33, 115.51, 115.53, and 115.93 and, in doing so, fraudulently claimed the monies available from the United States government and used the money for illegal and fraudulent purposes, all in violation of the False Claims Act. (*See* D.I. 1 at Counts 1, 2, 3, 4, 5, 21)

Fatir and DeBruce seek statutory proceeds of the *qui tam* action or settlement of the claim under 31 U.S.C. § 3730(d)(1). This section of the False Claims Act provides:

---

[9] Senato is not identified as a defendant in the caption of the Complaint or in its "II. Parties" section that describes each defendant, but he is described as defendant in the body of the Complaint.

(d) Award to qui tam plaintiff.--(1) If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3730(d)(1).

Section 3730(b) permits an individual to bring a suit on behalf of the United States based on violations of 31 U.S.C. § 3729, which enumerates seven separate ways of making a false claim. The Complaint does not indicate under which of the seven subsections Plaintiffs proceed. *See* 31 U.S.C. § 3729(a)(1).

As noted, the False Claims Act provides that a private individual, known as a relator, "may bring a civil action for a violation of section 3729 for the person and for the United States Government . . . in the name of the Government." 31 U.S.C.§ 3730(b)(1). "[A]lthough *qui tam* actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public at large, the Government remains the real party in interest in any such action." *Minotti v. Lensink*, 895 F.2d 100, 104 (2d Cir. 1990). The *qui tam* relator stands in the shoes of the government and is not acting on

8

his own behalf. *See Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007). Plaintiffs are not qualified to represent the interests of the United States given that they proceed *pro se* and none are licensed attorneys. *See United States ex rel. Gunn v. Shelton*, 2013 WL 5980633, *2 (D. Del. Nov. 12, 2013).

Fatir and DeBruce, as relators, may not proceed *pro se* as a matter of law. *See id.* Therefore, Counts 1, 2, 3, 4, 5, and 21 will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### B.    Prison Rape Elimination Act

Plaintiffs attempt to assert PREA claims based upon their dissatisfaction with prison officials' handling of their PREA complaints. (*See* D.I. 1 at Counts 1, 2, 3, 4, 5, 13, 14, 15, 16, 17, 18, and 21) In Counts 1 through 5 and 21, Plaintiffs allege that Defendants failed to comply with PREA through their actions and/or inactions. In Counts 13 through 18, Plaintiffs invoke the First, Fourth, Fifth, Sixth, and Fourteenth Amendments and allege constitutional violations in a conclusory manner while at the same time they allege the failure of prison officials comply with PREA.

 PREA does not provide a private right of action and, therefore, Plaintiffs are prohibited from asserting a claim pursuant to PREA. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-85 (2002); *Bowens v. Employees of the Dep't of Corr.*, 2015 WL 803101, at *1 n.1 (E.D. Pa. Feb. 26, 2015); *Washington v. Folino*, 2013 WL 998013, at *4 (W.D. Pa. Feb. 28, 2013) (violations of PREA do not create a private cause of action); *see also Henry v. CO #2 Gilara*, 2017 WL 3424863, at *3 (W.D. Pa. Aug. 9, 2017); *Njos v. United States*, 2016 WL 1720816 (M.D. Pa. Apr. 29, 2016).

In addition, the invocation of Constitutional Amendments does not save the PREA claims. As a matter of law, Plaintiffs cannot pursue a § 1983 claim based on Defendants' alleged failure to comply with the PREA. *See Haffner v. Geary Cty. Sheriff's Dep't*, 2019 WL 1367662, at *4 (D. Kan. Mar. 26, 2019).

To the extent that Plaintiffs attempt to raise claims pursuant to PREA, the claims fail as they are not cognizable. Counts 1 through 5, 13 through 18, and 21 will be dismissed as legally frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### C. 42 U.S.C. § 1983

Many of the remaining counts attempt to raise claims related to the March 31, 2018 strip search. Plaintiffs allege the strip searches violated the Fourth, Eighth, and Fourteenth Amendments. (*See* Counts 6, 7, 8, 9, 11, 12, and 22)

#### 1. Strip Searches, Fourth and Eighth Amendments

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. *See Williamson v. Garman*, 2017 WL 2702539, at *4 (M.D. Pa. June 22, 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979)). To raise a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable. *See Payton v. Vaughn*, 798 F. Supp. 258, 261-62 (E.D. Pa. 1992). Where a prisoner alleges that the strip search was conducted in a physical abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth

Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 WL 1067909, at \*17 n.6 (D.N.J. Mar. 29, 2012) (stating that, in addition to a possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").

While a strip search may constitute a "significant intrusion on an individual's privacy," *see United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), in the prison or detention facility setting, where officials conduct searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment. *See Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010); *Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (holding that prison officials may conduct visual body cavity searches whenever an inmate enters and exits his cell in the RHU, if performed in a reasonable manner). In addition, strip searches can be conducted by prison officials without probable cause. *Jones v. Luzerne Cty. Corr. Facility*, 2010 WL 3338835, at \*8 (M.D. Pa. Aug. 23, 2010) ("inmates do not have a right to be free from strip searches") (citing *Bell*, 441 U.S. at 558). Also, allegations that a strip search was degrading or embarrassing also fail to state a constitutional violation. *See Millhouse*, 373 F. App'x at 137 (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution").

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-

faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Hudson*, the absence of a serious injury to the inmate is relevant to the Court's inquiry, but does not end it. *Id.* However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimus uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Plaintiffs' allegations that they were subjected to a strip search by prison officials following a morning raid do not state a valid Fourth or Eighth Amendment violation. As alleged the overall manner in which the strip searches were conducted did not violate Plaintiffs' constitutional rights, even if in the presence of female officers. Plaintiffs fail to allege facts from which it can be concluded that Defendants went beyond a reasonable strip search or used unnecessary force during the strip search. It is reasonable for correctional officers to perform a strip search in light of the legitimate penological goal of maintaining prison security and checking for contraband or dangerous items while conducting a raid in the prison dorms. There are no allegations that any female officers conducted the strip search and there are no allegations that female officers viewing the camera feed is a regular occurrence. Moreover, as alleged, Tilghman, was the superior officer who controlled the March 31, 2018 operation and, as the supervisor, it is reasonable that she would view the camera feed to ensure no abuse occurred. In addition, while Plaintiffs complain that the entire strip searches lasted approximately two

hours, the allegations are that fifty inmates were individually searched, they were called into a room one at a time where they stripped, a visual inspection took place, and the inmates' clothing was inspected. If the search lasted two hours and there were fifty inmates, each search lasted, at most, two and one-half minutes.

That the search was recorded or on a live camera feed does not save Plaintiffs' claims or render the searches unconstitutional. Using a camera to record a strip search in a prison does not, by itself, amount to a constitutional violation. *See, e.g., Michenfelder v. Sumner*, 860 F.2d at 330, 333 (9th Cir. 19888) (no constitutional violation when search was conducted in hallway in view of other prisoners on the same tier and indirectly on video camera by opposite sex prison staff); *Davis v. Florence*, 600 F. App'x 26, 27 (2d Cir. 2015) ("defendants showed that their practice of having a supervisory officer present during strip frisks and recording strip frisks via wall-mounted video camera is reasonably related to the legitimate interests in both inmate and staff security at Sullivan."); *Henderson v. Oats*, 2018 WL 2054563, at *2 (W.D. Ky. May 2, 2018) ("Plaintiff's allegation that he was strip searched in a drunk tank with a camera fails to establish a violation of his constitutional rights."); *Bellamy v. City of New York*, 2017 WL 979064, at *3 (S.D.N.Y. Mar. 13, 2017) ("While he does mention that the search was conducted in a room with a security camera, there is no basis to find that the presence of a camera, by itself, was unreasonable. Indeed, the presence of cameras may assist prisoners by ensuring that government officials do not abuse prisoners while conducting searches."); *Sanchez v. Bauer*, 2015 WL 5026195, at *6 (D. Colo. Aug. 26, 2015) (allegation that the plaintiff was "video recorded" while he was strip

13

searched failed to state a Fourth Amendment claim); *Smith v. City of New York*, 2015 WL 3929621, at \*2 (S.D.N.Y. June 17, 2015) ("neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional."); *Peek v. City of New York*, 2014 WL 4160229, at \*2 (S.D.N.Y. Aug. 18, 2014) ("Without more, however, the presence of a camera at a strip search does not amount to a constitutional violation.").[10]

Plaintiffs' allegations that Satterfield and Barlow, both of whom are male, violated "the prohibition against cross-gender viewing of prisoners' genitals" and the Eighth Amendment when they viewed the live feed or recording is frivolous given there are no allegations that any named Plaintiff identifies as cross-gender and neither Defendant participated in the strip searches.

In addition, Plaintiffs' constitutional rights were not violated when the strip searches were viewed by two female correctional officers, one of whom was the superior officer. *See Robinson v. Boulier*, 121 F.3d 713, 1997 WL 546036 (8th Cir. 1997) (table decision) ("[I]nstitutional concerns for security and equal employment opportunities outweighs whatever minimal intrusion on inmate's privacy that might result from surveillance by female officers."); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992) (presence of female guards during strip search of male inmate did not violate constitutional right to privacy); *Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990)

---

[10] A case finding constitutional violations when a strip search is recorded involve factual circumstances not present here. *See Baggett v. Ashe*, 41 F. Supp. 3d 113, 122 (D. Mass. 2014) ("strip searches of female inmates unreasonable when male officers were present during actual strip search, stood just a few feet away with video camera and female inmate was required to strip naked and manipulate her body while in the direct presence of the male guard videotaping her.

(opposite-sex surveillance of male inmates, performed on the same basis as same-sex surveillance is not 'unreasonable.' "Whatever minimal intrusions on an inmate's privacy [that] may result from such surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities."); *Sypchala v. Rushen*, 877 F.2d 64, 1989 WL 67110 (9th Cir. 1989) (table decision) (presence of female guards while male prisoners are naked is incidental to the legitimate interest of maintaining prison security); *Grummet v. Rushen*, 779 F.2d 491, 496 (9th Cir.1985) ("[t]o restrict . . . female guards from . . . occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities."). Because the use of female prison guards is reasonably related to a legitimate penological objective, an inmate's limited right of bodily privacy must yield to that policy.

Finally, assuming arguendo, that a live camera stream or recording of the searches violated prison policy, a one-time violation of an internal policy does not automatically rise to the level of a constitutional violation. "[A] prison policy manual does not have the force of law and does not rise to the level of a constitutional violation." *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2008) (citing *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004)). "[A]gency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'" *Mercy Catholic Med. Ctr.*, 380 F.3d at 155 (citation omitted).

15

The Complaint does not allege that Defendants conducted the search in an unreasonable manner, in a physically abusive fashion, or with excessive force. The Complaint does not state a Fourth or Eight Amendment claim and the conduct complained of fails to rise to the level of a constitutional violation cognizable under § 1983. Therefore, the Court will dismiss Counts 6, 7, 8, 9, 11, 12, and 22 as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).[11]

## 2. Strip Searches, Fifth and Fourteen Amendments

Plaintiffs attempt to raise equal protection and due process claims under the Fifth and Fourteenth Amendments. (*See* D.I. 1 at Counts 12, 13)

Plaintiffs allege that Satterfield, Barlow, Enck, and Jester violated their equal protection rights "as DOC employees who perform strip search searches of inmates similarly situated" to Plaintiffs and that the foregoing Defendants "knew, or reasonably should have known, that the videotaped search . . . was unusual, and outside the scope of DOC policy." (*Id.* at 16 at Count 12) The allegations do not support an equal protection claim.

A plaintiff may bring an equal protection claim under two legal theories: (1) by alleging a defendant treated him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin, *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305, n.112 (3d Cir.

---

[11] Plaintiffs allege a conspiracy to violate their Fourth Amendment rights and a violation of their Eighth Amendment rights for failure to intervene in the strip searches. There can be no conspiracy to violate the Fourth Amendment when the strip search, as alleged, was reasonable. Similarly, there can be no violation for failure to intervene to stop a strip search, when the search, as alleged, was reasonable and not conducted in an abusive fashion or with excessive force.

2016); or (2) in a "class of one", by alleging a defendant treated him differently from others similarly situated for arbitrary or irrational reasons, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Phillips v. County of Allegheny*, 515 F.3d at 243. As pled, the conclusory allegations do not provide a basis to show that Plaintiffs are in a protected class or how Defendants violated Plaintiffs' right to equal protection.

Count 13 alleges in a conclusory manner a violation of Plaintiff's right to due process under the Fifth and Fourteenth Amendments. (D.I. 1 at 16 at Count 13) The Complaint does not indicate whether Plaintiffs claim procedural or substantive due process. Regardless, the claim fails.

Plaintiffs allege a Fifth Amendment due process violation, but they are in state custody, not federal custody and the claim is analyzed under the Fourteenth Amendment. To the extent a due process claim is alleged, the Fourteenth Amendment provides the applicable avenue for raising such a claim. Conducting a procedural due process analysis involves a two-step inquiry: (1) whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, (2) whether the process afforded the complaining party comported with constitutional requirements. *See Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). "When the complained of conduct is 'random and unauthorized' (so that state authorities cannot predict when such unsanctioned deprivations will occur), however, the 'very nature of the deprivation ma[kes] predeprivation process impossible.' In such situations, postdeprivation process is all that is due." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 213 (3d Cir. 2001).

Here, the nature of the alleged deprivation — the strip search, "renders a pre-deprivation hearing an impossibility due to the randomness of the Defendants' actions." *Brothers v. Lawrence Cty. Prison Board*, 2008 WL 146828, at *10 (W.D. Pa. Mar. 4, 2008). Even were Plaintiffs subjected to a strip search in the presence of females (and there are no allegations they were) the allegations would fail to state a claim because such a strip search does not, as a matter of law, impose an atypical and significant hardship in relation to the ordinary incidents of prison life as required under Sandin in order to constitute a "liberty interest". *Id.; see also Sandin v. O'Connor*, 515 U.S. 472 (1995); *McGill v. Czerniak*, 83 F.3d 427 (9th Cir. 1996) (Plaintiff's "Fourteenth Amendment due process rights were not violated because the prison's failure to adhere to regulations governing inmate searches did not present the type of atypical and significant deprivation that might conceivably create a liberty interest"); *Drummer v. Luttrell*, 75 F. Supp. 2d 796 (W.D. Tenn. 1999) (strip-search of inmate as part of disciplinary procedure did not support inmate's § 1983 action against corrections officials alleging due process violations, since officials' actions did not impose atypical and significant hardship upon inmate).

To the extent Plaintiffs seek to raise a substantive due process claim, such claims must be dismissed as barred by the doctrine set forth in *Albright v. Oliver*, 510 U.S. 266 (1994) and *Graham v. Connor*, 490 U.S. 386 (1989). Under the doctrine, the availability of claims under substantive due process have been limited to those which are not covered by the legal tests and standards under other amendments. *County of Sacramento v. Lewis, 523* U.S. 833 (1998). The limitation on substantive due process

18

claims is as follows: "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision and not under the rubric of substantive due process." *Id.* at 843.

In the instant case, Plaintiffs' claims are covered under either Fourth or Eighth Amendment standards. Therefore, Plaintiffs do not have an additional cause of action under the Fourteenth Amendment's more open-ended due process clause standard. Plaintiffs' substantive due process clause claims will be dismissed.

The conduct complained of in Counts 12 and 13 does not state equal protection or due process claims. Therefore, these Counts will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### 3.  Right to Privacy, Fourth and Eighth Amendment

Count 13 alleges Phelps, Metzger, Wesley, Doe, Sennett, Taylor, Cessna, Parker, Scarborough, Senato, and Brennan violated Fourth Amendment protection pertaining to rape-related privacy by permitting Doe, a correctional guard, who is not an "outside advocate and third party," to receive PREA calls for help from Plaintiffs. (D.I. 1 at 16 at Count 13)  Count 20 alleges that Phelps, Metzger, Wesley, Sennett, Taylor, Cessna, Parker, Brennan, Burton, Satterfield, Parker, Scarborough, Senato, and Russell posted a camera that "views, films and records the residential living area and bathroom of Dorm 3, B-Annex where [P]laintiffs are subject to . . . their private activities in the Dorm and bathroom filmed and recorded" in violation of the Fourth and Eighth Amendments. (*Id.* at 17 at Count 20)  Count 20 further alleges that the camera views

19

the residential and bathroom areas where men disrobe, undress, urinate, defecate, apply body lotion and have no opportunity . . . to maintain their hygiene in any humane privacy." (*Id.*)

Prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care. . . ." *Farmer v. Brennan*, 511 U.S. 511 U.S. 825, 832 (1994). An Eighth Amendment claim for cruel and unusual punishment may be stated by allegations that an inmate is forced to be naked under circumstances such as a malicious act intended to humiliate the inmate for no legitimate penological reason. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 228-229 (3d Cir. 2015); *King v. McCarty*, 781 F.3d 889, 896, 898 (7th Cir. 2015) (prisoner stated an Eighth Amendment claim for cruel and unusual punishment by alleging that he was "degraded and humiliated by being transported in a see-through jumpsuit that left him exposed in front of other inmates as well as guards of both sexes" for no legitimate reason).

Under the Fourth Amendment, an inmate has a limited right of bodily privacy subject to reasonable intrusions necessitated by the prison setting. *See Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016); *See also Bracey v. Secretary Pennsylvania Dep't of Corr.,* 686 F. App'x 130, 136 (3d Cir. 2017) (prisoner's privacy rights were not violated when he was housed in in a continuous-camera observation cell for eight months because security cameras were an expected part of the prison environment, the monitors were not manned 24/7 and the likelihood that prisoner was constantly being watched was remote, and there was no indication that prisoner had any less privacy in

the observation cell with respect to showering and toileting than he would have had in communal bathrooms and showers).

Even when liberally construing the allegations, neither Count 13 nor Count 20 state cognizable claims. Count 13 alleges that Plaintiffs made PREA claims to Doe, an individual who was not "an outside advocate and third party" and somehow this violated their right to privacy under the Fourth Amendment.[12] Plaintiffs voluntarily provided the information and there are no allegations that Doe improperly disclosed the information provided to her. Moreover, as a matter of law, Plaintiffs cannot pursue a § 1983 claim based on Defendants' alleged failure to comply with the PREA. See *Haffner v. Geary Cty. Sheriff's Dep't*, 2019 WL 1367662, *supra*.

Similarly, the allegations in Count 20 fail to allege facts that rise to the level of a constitutional violation under either the Fourth or Eighth Amendments. Indeed, security cameras are an expected part of the prison environment. Notably, there are no

---

[12] Standing alone, the claim is more properly raised as a Fourteenth Amendment right to privacy. A close analogy is the dissemination of an inmate's medical records. According to the Supreme Court, a constitutional right to privacy exists in order to protect "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). The Third Circuit defined a right to privacy regarding medical information stating: "[t]here can be no question that . . . medical records, which may contain intimate facts of personal nature, are well within the ambit of materials entitled to privacy protection." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980). However, "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen." *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001). Furthermore, "[a] prisoner's constitutional right to privacy . . . , 'is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security. Any policy or regulation that curtails such right must be "reasonably related to legitimate penological interests.'" *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In order to succeed on a Fourteenth Amendment right to privacy claim, an inmate plaintiff must allege that the information seized contained information that the defendant disclosed to a third party. *Doe*, 257 F.3d at 317 (citing *Whalen*, 429 U.S. at 599-600).

allegations that security cameras were installed maliciously with the intent to humiliate Plaintiffs.

Counts 13 and 20 claims have no arguable basis in law or in fact. Both counts will be dismissed as legally frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

### 4. Obstruction of Grievance Process

Count 15 alleges that Taylor[13] and Cessna, as PREA officers, violated Plaintiffs' rights by obstructing the investigation and assigning and/or assisting Sennett in the investigation of the March 31, 2018 strip search, rather than refer the matter to an outside third party advocate. (D.I. 1 at 16 at Count 15) Count 15 alleges that Taylor and Cessna acted to block Plaintiffs from receiving an advocate and asserting their rights. It further alleges that by obstructing the grievance process, Taylor and Cessna acted to delay and obstruct Plaintiffs' right of access to the courts.

As previously discussed, as a matter of law, Plaintiffs cannot pursue a § 1983 claim based on Defendants' alleged failure to comply with the PREA. It is not clear if when referring to "the grievance process" Plaintiffs refer the prison grievance process or the PREA process. Regardless, the allegations against Taylor are Cessna are conclusory and do not indicate how Taylor or Cessna allegedly obstructed the investigation or blocked Plaintiffs from asserting their rights.

To the extent that the claim is based upon Plaintiffs' dissatisfaction with the grievance procedure or denial of grievances, the claim fails because an inmate does not

---

[13] There are two defendants with the last name "Taylor." Count 15 does not identify the "Taylor" named in the Count 15.

have a "free-standing constitutional right to an effective grievance process." *Woods v.*

*First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d

728, 729 (8th Cir. 1991)). The denial of grievance appeals does not in itself give rise to

a constitutional claim as Plaintiffs are free to bring a civil rights claim in District Court, as

they have done. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009)

(citing *Flick v. Alba*, 932 F.2d at 729).

To the extent Plaintiffs allege denial of access to the courts, the claim also fails.

A violation of the First Amendment right of access to the courts is only established

where a litigant shows that he was actually injured by the alleged denial of access. The

actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518

U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U .S. 403, 415 (2002) (explaining

that the constitutional right of access is "ancillary to the underlying claim, without which

a plaintiff cannot have suffered injury by being shut out of court"). An actual injury is

shown only where a nonfrivolous, arguable claim is lost. *Christopher*, 536 U.S. at 415.

The facts do not meet the elements of an access to the courts claim as is evidenced by

the filing of this lawsuit.

Accordingly, the Court will dismiss Count 15 as legally frivolous pursuant to 28

U.S.C. § 1915(e)(2)(B)(1) and § 1915A(b)(1).

### 5. Retaliation

Count 19 alleges that Russell threatened retaliation against all residents of Dorm

3, B-annex, "for what you guys pulled off", referring to PREA reports, in violation of

Plaintiffs' constitutional rights. (D.I. 1 at 17 at Count 19) Plaintiffs allege that Russell

23

has been "rude, loud, insulting, and threatening to Plaintiffs since the PREA report was made; and acted in a retaliatory manner to restrict recreation and telephoned Education Officer Jay Nieves on 5/12/18 to get inmates expelled from art class." (*Id.* at 6 at ¶ III)

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

Proof of a retaliation claim requires Plaintiffs to demonstrate that: (1) they engaged in protected activity; (2) they were subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997).

The Court assumes, without deciding, that a PREA report is a form of protected speech. However, the claim fails for a number of reasons. The Complaint does not indicate who, of the Plaintiffs, made a PREA report. It seems that Fatir did, but as pled the Court cannot discern if other Plaintiffs also made complaints. (*See* D.I. 1 at 5 at ¶ III.) Also, as pled the Court is unable to discern who Russell directed his alleged retaliatory conduct towards. Russell's alleged rude and insulting behavior, while boorish, is not retaliatory. What is not clear from the allegations is whether recreation was actually restricted or if there was merely a threat to restrict it. Nor does the Complaint state who, of the Plaintiffs, were expelled from art class.

The retaliation fails to state a claim upon which relief may be granted and, therefore, Count 19 will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Because it is plausible that Plaintiffs may be able to cure the pleading defects, they will be allowed amend Count 19.

### D. Qualified Immunity

Count 10 alleges that Defendants Satterfield, Barlow, Tilghman, Everett, Enck, and Jester are not entitled to qualified immunity because it is "preempted" as to the alleged Fourth Amendment violations.

Qualified immunity is an affirmative defense that may be raised by Defendants. *See Mrazek v. Stafford Twp.*, 744 F. App'x 69, 72 (3d Cir. 2018) (citations omitted) ("Qualified immunity is an affirmative defense designed to "protect government officials from insubstantial claims in order to 'shield officials from harassment, distraction, and liability when they perform their duties reasonably.'") The Court, not Plaintiffs, makes

the legal determination whether qualified immunity is applicable. *See e.g., Egolf v. Witmer*, 526 F.3d 104 (3d Cir. 2008). Count 10 is frivolous and will be dismissed.

### E.    HIPAA

Count 13 alleges violations of HIPAA, (*i.e.*, Health Insurance Portability and Accountability Act of 1996) ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), a "law protecting Plaintiffs from having guards informed of their heath issues." (D.I. 1 at Count 13)

It has been commonly recognized that HIPAA does not create a private cause of action. HIPAA creates its own enforcement mechanism under 42 U.S.C. § 300gg-22, which limits enforcement actions to the states or the Secretary of Health and Human Services. *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469 (D.N.J. 2013) ("The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA complaint, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens."). Hence, an alleged HIPAA violation does not give rise to a cognizable claim under § 1983. *See Jackson v. Mercy Behavioral Health,* 2015 WL 401645, at *4 (W.D. Pa. Jan. 28, 2015) (citations omitted); *Ball v. Famiglio*, 2012 WL 1886676, at *11 (M.D. Pa. Mar. 14, 2012); *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011).

Accordingly, the Court will dismiss the HIPAA claims as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## F.    Supplemental Claim of Violation of Delaware Constitution

Plaintiffs allege the March 31, 2018 strip search violated Article 1, Section 6 of the Delaware Constitution.  However, the claim fails since, as discussed above, there was no violation of Plaintiffs' Fourth Amendment rights.  *See e.g., State v. Prouse*, 382 A.2d 1359 (Del. 1978), *aff'd,* 440 U.S. 648 (1979) (violation of the Fourth Amendment is also a violation of Article 1, Section 6 of the Delaware Constitution).  Count 11 will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## V.    CONCLUSION

For the above reasons, the Court will:  (1) dismiss the Complaint as frivolous and for failure to state claims upon which relief may be granted pursuant 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1).  Plaintiffs will be given leave to amend only Count 19 raised against Sgt. Russell.  All other Defendants will be dismissed.  Amendment is futile as to Counts 1 through 18 and 20 through 22.

An appropriate order will be entered.