IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMIR FATIR, et al.,

      Plaintiffs,

  v.

SGT. RUSSELL,

      Defendant.

: Civil Action No. 18-933-CFC

---

Amir Fatir, Jermaine D. Laster, and Robert W. Johnson, Jr., James T. Vaughn Correctional Center, Smyrna, Delaware

Robert Michael Kleiner, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.   Counsel for Defendant.

**MEMORANDUM OPINION**

January 19, 2023
Wilmington, Delaware

**CONNOLLY, Chief Judge:**

Plaintiffs Amir Fatir, Jermaine Laster, and Robert Johnson, Jr., inmates all of whom were housed at the James T. Vaughn Correctional Center ("JTVCC") during the relevant time-frame, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional rights. (D.I. 1) They appear *pro se* and were granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The Amended Complaint, filed June 10, 2019, is the operative pleading. (D.I. 80) The only remaining Defendant is Sgt. Russell. Pending is Defendant's motion for summary judgment, Plaintiff Fatir's response, and Defendant's reply. (D.I. 129, 132, 139) Also pending are Plaintiff Fatir's motion to depose Defendant and witnesses (D.I. 122), Plaintiff Fatir's motion to compel discovery (D.I. 126), Plaintiff Laster's motion to join Plaintiff's Fatir's response to Defendant's motion for summary judgment (D.I. 137), and Plaintiff Johnson's motion to join Plaintiff Fatir's response (D.I. 138)

## I. BACKGROUND AND FACTS AS PRESENTED BY THE PARTIES[1]

Plaintiffs' sole remaining claim is a First Amendment retaliation claim predicated upon Defendant allegedly retaliating against them after they lodged Prison Rape Elimination Act ("PREA") complaints via phone calls following a strip search at JTVCC in the presence of a video camera on March 31, 2018.

---

[1] The factual recitation is drawn from Plaintiffs' depositions. (D.I. 131 at 5-86)

1

(D.I. 80)[2]  It is undisputed that Defendant was not present for the strip search. However, Defendant ran the building where Plaintiffs were housed.  (D.I. 131 at 14, 75)  Plaintiffs allege that two days after they filed their PREA complaints, Defendant arrived at their dorm and angrily threatened all of the inmates housed in the dorm by announcing, "because of what you guys did I'm going to hold it on you . . . and you guys got nothing coming from me but grief[.]"  (*Id.* at 9)  Plaintiff Fatir testified that Defendant stated "something along the lines of . . . you could forget about getting rec time and stuff like that."  (*Id.* at 20)  Although Defendant did not specifically mention the PREA complaint, Fatir testified that Defendant "referenced the incident and the phone calls."  (*Id.*)  Plaintiff Laster testified that Defendant knew about the PREA complaints and was upset that Plaintiffs "went above his head" to make the calls reporting the strip search incident.  (*Id.* at 73)

Plaintiffs Fatir and Johnson testified that Defendant retaliated against them by cancelling or shortening their recreation time on several occasions.  Plaintiff Fatir testified that "[t]wice a day, sometimes once a day, we have what's called outside rec, and that's something we look forward to, of course, being cooped up in

---

[2] All other claims and Defendants were dismissed as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1).  (D.I. 73, 74)

a dormitory." (*Id.* at 18) Fatir testified that recreation was cancelled "frequently" and that there was "a very good chance when rec was called that he was going to cancel our rec." (*Id.*) Fatir clarified that "we didn't totally lose rec but we lost it sometimes." (*Id.* at 20) He could not recall with what frequency the cancellations had occurred, or with certainty whether recreation had ever been cancelled on two consecutive days, but he thought it very likely that two-day stretches of cancellations had occurred. (*Id.* at 18-19)

Plaintiff Johnson, testified to "[j]ust occasional loss of recreation and such or . . . things being late." (*Id.* at 50) When asked to clarify the meaning of "occasional loss of recreation," he testified that recreation "would sometimes be late getting out" and that it was "just minor things but enough to irritate." (*Id.*) Johnson further clarified that the morning block of recreation usually lasted an hour and forty-five minutes, the afternoon block was approximately the same, and that by "occasional loss of recreation" and "things being late," he meant the same thing—that the inmates would lose between a half hour and an hour of a recreation block. (*Id.*) When asked with what frequency he lost recreation time in the four years between calling the PREA hotline in April 2018 and his April 2022 deposition, Johnson testified that he remembered "quite a number of times we got at least a half-hour or more chopped off our time." (*Id.* at 52)

Both Plaintiffs Fatir and Johnson testified that in the normal course of events

3

recreation would occasionally be cancelled or shortened for reasons such as inclement weather; "codes," which included guards being deployed to break up fights; lockdowns; and occasionally with no explanation provided. (*Id.* at 19-20, 52-53)

Plaintiff Fatir alleges also that Defendant retaliated against him by attempting, unsuccessfully, to have him excluded from art class on one occasion. Plaintiff Fatir heard Defendant on the phone saying that he "didn't feel like writing all these passes," and requested that Fatir and other specific inmates in the dorm be removed from the "education list." (*Id.* at 15) However, according to Fatir, Defendant was advised that he did not have the authority to remove inmates from the education list unless they had broken a rule or had done "something" to be excluded from education. (*Id.* at 17) Defendant then wrote passes for Plaintiff Fatir and the other individuals and the issue never came up again. (*Id.*) Plaintiffs Johnson and Laster did not allege having been targeted by Defendant in this manner.[3]

Defendant moves for summary judgment. (D.I. 129) Plaintiffs have filed a response in opposition. (D.I. 132)[4]

---

[3] Defendant denies threatening Plaintiffs; attempting to remove any of them from art class or cancelling recreation time (or having the authority to carry out either action); or taking any other retaliatory action against Plaintiffs. (D.I. 131 at 3-4)

[4] The Court will grant Johnson and Laster's motions to join Fatir's response in

4

## II. LEGAL STANDARDS

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

opposition to summary judgment. (D.I. 137, 138)

5

declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted).

### III. DISCUSSION

Defendant argues that there is deficient evidence in the record to support Plaintiffs' retaliation claim. Plaintiffs argue that there are disputed issues of material fact and that they need more time to conduct discovery because Defendant has not complied with discovery requests.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under Section 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

Proof of a retaliation claim requires Plaintiffs to demonstrate that: (1) they engaged in protected activity; (2) they were subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). To determine whether the alleged retaliatory conduct "was sufficiently adverse to state a claim for retaliation," courts consider whether the action "was sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000). The adverse action "need not be great" but "must be more than de minimis." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a

7

causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997).

The Court assumes, without deciding, that a PREA report is a form of protected speech. Furthermore, there is sufficient evidence in the record to create a genuine issue of material fact regarding the causation element of Plaintiffs' retaliation claim.[5]

---

[5] The Court rejects Defendant's argument that because he was not present for the strip search and was not identified in the PREA complaints, his alleged conduct cannot be considered First Amendment retaliation. In support, Defendant cites case law rejecting, "for lack of retaliatory motive," retaliation claims against defendants who were not the targets of a plaintiff's protected activity. *See, e.g., Murray v. Smithbower*, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021). However, Laster's testimony that Defendant was upset that Plaintiffs "went above his head" to lodge the PREA complaints is sufficient to create a genuine issue of material fact as to Defendant's retaliatory motive.

[6] As noted, Johnson clarified that his references to the loss of recreation and the shortening of recreation were synonymous. In the response to Defendant's motion for summary judgment, Plaintiffs assert that, contrary to their sworn deposition testimony, their recreation period alternated daily between one session in the morning and one session in the afternoon, and that they had no recreation two days in a row "many times" when, "for whatever reason" (including the weather), they lost individual sessions on back-to-back days. (D.I. 132 at 10) The Court does not give these new unsworn assertions of fact any credence, particularly as they contradict Plaintiffs' prior sworn testimony from their depositions. *See Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 547 (3d Cir. 2012) ("Even on summary judgment, we need not credit a declaration contradicting a witness' prior sworn statements."); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (discussing the sham affidavit doctrine). Even were the Court to accept these new assertions as evidence, they would not change the conclusion that Plaintiffs failed to create a genuine issue of material fact as to the adverse action requirement of their retaliation claim.

However, with regard to the adverse action element, viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, the Court concludes that there is no dispute as to any material facts, Plaintiffs cannot satisfy this requirement, and Defendant is therefore entitled to judgment as a matter of law. In *Burgos v. Canino*, the plaintiff alleged that the defendant retaliated against him by, *inter alia*, "repeatedly den[ying] him his one hour recreational period" while the plaintiff was confined to the restrictive housing unit for 77 days. 641 F. Supp. 2d 443, 451 (E.D. Pa. 2009). The district court granted summary judgment in the defendant's favor on the retaliation claim, noting that the plaintiff had visited the recreation yard "on at least 17 occasions" during the 77-day period, that he had "no constitutional right to access the yard as often as he desires," and that "[o]ccasional lack of exercise does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Id.* at 455-56. The Third Circuit affirmed, holding that "[e]ven assuming that [the defendant] deprived [the plaintiff] of his recreation period . . . there is evidence in the record that for the time period in question, [the plaintiff] had ample opportunity to exercise when [the defendant] was not on duty, . . . such that any deprivation caused by [the defendant] did not rise to the level of an adverse action." *Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009).

Here, Plaintiff Johnson, testified to "occasional loss of recreation" and

9

"sometimes be[ing] late getting out," which he defined as losing between a half hour and an hour of a recreation period, which typically lasted about hour and forty-five minutes. He characterized these shortened recreation periods as "just minor things but enough to irritate." (*Id.* at 50) "Minor" and "irritating" conduct does not rise to the level of an action that would "deter a person of ordinary firmness from exercising his First Amendment rights." *See Allah*, 229 F.3d at 225 (internal quotation marks omitted). To the contrary, this language is an apt description of de minimis conduct, which is insufficient to constitute an adverse action for a retaliation claim. *See McKee*, 436 F.3d at 170. Although Fatir and Johnson both used language describing the cancellation or shortening of recreation, like "frequently," "quite a number of times," and a "very good chance" of occurring, and Fatir testified that it was likely that recreation was occasionally cancelled for two-day stretches, they both also characterized the cancelled and shortened periods as occurring "sometimes" and "just occasional[ly]."[6]

---

[6] As noted, Johnson clarified that his references to the loss of recreation and the shortening of recreation were synonymous. In the response to Defendant's motion for summary judgment, Plaintiffs assert that, contrary to their sworn deposition testimony, their recreation period alternated daily between one session in the morning and one session in the afternoon, and that they had no recreation two days in a row "many times" when, "for whatever reason" (including the weather), they lost individual sessions on back-to-back days. (D.I. 132 at 10) The Court does not give these new unsworn assertions of fact any credence, particularly as they contradict Plaintiffs' prior sworn testimony from their depositions. *See Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 547 (3d Cir. 2012) ("Even on summary judgment, we need not credit a declaration contradicting a witness' prior sworn

In any event, it is quite clear based on Plaintiffs Fatir and Johnson's testimony that, like the plaintiff in *Burgos*, "[e]ven assuming that [Defendant] deprived [Plaintiffs] of [their] recreation period . . . there is evidence in the record that for the time period in question, [Plaintiffs] had ample opportunity to exercise when [Defendant] was not on duty, . . . such that any deprivation caused by [Defendant] did not rise to the level of an adverse action." *Burgos*, 358 F. App'x at 307. Indeed, it is evident from Plaintiffs' testimony that Plaintiffs also had ample opportunity to exercise when Defendant was on duty.

The Court notes as well that the question presented is not whether the alleged deprivation of recreation *itself* was a constitutional violation. *See Allah*, 229 F.3d at 224 ("Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.") (citation omitted). Rather, the Court concludes, after carefully considering Plaintiffs Fatir and Johnson's testimony, and viewing the testimony in the light most favorable to Plaintiffs, that Plaintiffs did not create a genuine issue of material fact that Defendant's alleged actions regarding recreation would

---

statements."); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (discussing the sham affidavit doctrine). Even were the Court to accept these new assertions as evidence, they would not change the conclusion that Plaintiffs failed to create a genuine issue of material fact as to the adverse action requirement of their retaliation claim.

11

objectively deter an ordinary prisoner from exercising his First Amendment Rights.[7]  The Court easily concludes the same regarding Defendant's alleged unsuccessful single-time effort to exclude Plaintiff Fatir from art class, whether viewed independently or cumulatively with the allegations regarding the recreation deprivation.

Finally, the Court will deny Plaintiff Fatir's discovery motions.  With regard to his motion to depose Defendant and witnesses (D.I. 122), Plaintiff Fatir could not depose parties or non-parties without paying for the costs associated with conducting depositions, and the Court has no authority to finance or pay for a party's discovery expenses.  *See Badman v. Stark*, 139 F.R.D. 601, 605 (M.D. Pa. 1991) (28 U.S.C. § 1915 does not require the government to advance funds for deposition expenses); *Doe v. United States*, 112 F.R.D. 183, 184-85 (S.D.N.Y. 1986) (*in forma pauperis* statute does not require government to advance funds for deposition expenses).  Furthermore, Fatir could not depose a non-party without issuing a subpoena to compel his or her attendance, *see* Fed. R. Civ. P. 45, and an

---

[7] Plaintiff Fatir testified at his deposition and in an affidavit filed with the response to Defendant's motion for summary judgment that Defendant's actions subjectively chilled him personally from later utilizing the grievance and PREA systems.  (D.I. 131 at 26; D.I. 132-1 at ¶¶ 26-27)  However, the question of whether conduct "is sufficient to deter a person of ordinary fitness from exercising his constitutional rights" is an objective inquiry."  *Bistrian v. Levi*, 696 F.3d 352, 377 (3d Cir. 2012) (quoting *Allah*, 229 F.3d at 225).

12

inmate proceeding *in forma pauperis* in a civil action may not issue subpoenas without paying the required fees, such as attendance and mileage fees, *see Pedraza v. Jones*, 71 F.3d 194, 196 n.4 (5th Cir. 1995). There was no showing of Plaintiff Fatir's ability to pay the fees associated with issuing subpoenas and conducting depositions; to the contrary, he requested that the Court cover these costs. The Court will also deny Plaintiff Fatir's motion to compel discovery (D.I. 126), because the sought-after discovery was requested after the discovery deadline, as outlined in Defendant's response. (D.I. 127)[8]

## IV. CONCLUSION

For the above reasons, the Court will: (1) grant Defendant's motion for summary judgment (D.I. 129); (2) deny Plaintiff Fatir's motion to depose defendant and witnesses (D.I. 122); (3) deny Plaintiff Fatir's motion to compel discovery (D.I. 126); (4) grant Plaintiff Laster's motion to join Plaintiff Fatir's response in opposition to Defendant's motion for summary judgment (D.I. 137);

---

[8] To the extent Plaintiffs' assertion that they should be entitled to additional discovery time can be construed as a motion under Federal Rule of Civil Procedure 56(d), the motion is denied as procedurally deficient based on their failure to file a supporting affidavit or declaration. *See McCluskey v. Vincent*, 505 F. App'x 199, 205 (3d Cir. 2012) ("[The plaintiff] did not file an affidavit in support of his 'request' for more discovery, 'and therefore, as a procedural matter alone, [he] has failed to comply' with Rule 56(d).") (second alteration in original) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988)); *see also Hancock Industries v. Schaeffer*, 811 F.2d 225, 230 (3d Cir. 1987). Furthermore, given that Plaintiffs' own sworn deposition testimony doomed their claim, the Court questions the value of these proposed depositions and requested discovery.

13

and (5) grant Plaintiff Johnson's motion to join Plaintiff Fatir's response in opposition to Defendant's motion for summary judgment (D.I. 138)

An appropriate order will be entered.